# EXHIBIT B

FORM B10 (Official Form 10) (DRAFT)

| UNITED STATES BANKRUPTCY COURT __Western__ DISTRICT OF __Kentucky__ | PROOF OF CLAIM |

FILED
US BANK COURT CLERK
DIST
06 APR -3 PM 2:54

| Name of Debtor<br>Decker College, Inc. | Case Number<br>05-61805 (2) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

U.S. Department of Education

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
Andrea Neichter, AUSA
Office of the US Attorney
500 West Broadway, 10th Floor
Louisville, KY 40202
Telephone number: (502) 582-6942

☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here ☐ replaces ☐ amends a previously filed claim, dated:_____
if this claim

1. **Basis for Claim**
   - ☐ Goods sold
   - ☐ Services performed
   - ☐ Money loaned
   - ☐ Personal injury/wrongful death
   - ☐ Taxes
   - ☒ Other __contract and federal law__
   - ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   - ☐ Wages, salaries, and compensation (fill out below)
     Last four digits of SS #: _____
     Unpaid compensation for services performed
     from _____ to _____
         (date)         (date)

2. **Date debt was incurred:**
   July 2003 through September 2005

3. **If court judgment, date obtained:**

4. **Total Amount of Claim at Time Case Filed:** $ __31,595,885__ _____ $513,761 $32,109,646
   (unsecured)        (secured)    (priority)    (Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate  ☐ Motor Vehicle
   ☐ Other_____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Nonpriority Claim** $ __31,595,885__
   ☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ __513,761__
   Specify the priority of the claim:
   - ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   - ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
   - ☒ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   - ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   - ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
   - ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   *Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
| March 31, 2006 | X _Carolyn D. White_, Carolyn D. White, Director, SPT Team-SC |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## Table of Contents

I. INTRODUCTION .......................................................................................................... 5

II. SCOPE OF REVIEW .................................................................................................... 5

III. FINDINGS AND REQUIREMENTS ......................................................................... 6

   1. INELIGIBLE PROGRAM -- APPROVAL REQUIREMENTS NOT MET ....................... 6

   2. RETURN OF FUNDS CALCULATION NOT DOCUMENTED/NOT PAID ..................... 8

   3. FFEL DISBURSEMENTS ATTRIBUTED TO UNATTENDED/INCORRECT PAYMENT PERIODS ........................................................................................................................ 10

   4. IMPROPER DISBURSEMENT--FEDERAL PELL GRANT DISBURSED PRIOR TO MIDPOINT ..................................................................................................................... 11

   5. INCORRECT FEDERAL PELL GRANT CALCULATION FOR INSTITUTION WITHOUT FIXED TERMS ............................................................................................. 12

   6. LACK OF ADMINISTRATIVE CAPABILITY ............................................................ 14

IV. LIABILITY SUMMARY ............................................................................................ 14

V. APPEAL PROCEDURES ............................................................................................ 14

# INSTITUTIONAL REVIEW DATA SHEET

Decker College
9721 Ormsby Station Road
Louisville, KY 40223

**DATES OF REVIEW:**         June 6 -10, 2005

**AWARD YEARS REVIEWED:**    2003-04        2004-05

**OPE ID #:**                03077700

**DUNS #:**                  624882288

**TIN #:**                   611209896

**TYPE AND CONTROL:**        Proprietary/Two Year

**ACCREDITATION:**           Council on Occupational Education

**REVIEWING ED OFFICIALS:**  Dvak Corwin      Bill Hudson
                             Knovel Rogers    Susan Crim
                             Richard Moore

**FSA PROGRAM PARTICIPATION:**

| 2002-03 | 2003-04 | 2004-05 | |
|---|---|---|---|
| $ 804,862 | $4,035,280 | $14,380,777 | Federal Pell Grant Program |
| $2,033,976 | $7,222,318 | $     78,765 | Federal Direct Loan Program |
| $ | $ 804,972 | $22,756,540 | Federal Family Education Loan |
| $  32,552 | $    43,351 | $     75,000 | FSEOG |

Source – NSLDS Reported Funding as of 03/28/2006
(See **Attachments 6a and 6b** enclosed CD)

**DEFAULT RATE:**            2.7% 2003 Co-hort

**METHOD OF FUNDING:**       HCM2

**INSTITUTIONAL OFFICIALS CONTACTED:**

William Weld – CEO
Mark Stein – CFO
Jeff Woodcox – Owner
Gerald Woodcox - Owner
Lisa Lipe – Financial Aid Director
Beverly Sensenbrenner – Financial Aid Officer
Note: A number of Decker staff employees were interviewed as part of the Program Review process

4

## I.  INTRODUCTION

Decker was a private, two-year, career institution with the corporate headquarters in Louisville, Kentucky, with additional locations in Louisville, KY, Atlanta, GA, Indianapolis, IN and Jacksonville, FL. Decker provided education and training leading to a certificate in a number of vocational programs, or to an Associate in Applied Science degree, in the fields of Carpentry, HVAC, Electrician, Computer Networking, Medical Office Technology Business, or Paralegal Studies. The enrollment for the 2004-05 award year was approximately 4,900 students with nearly 100% being eligible for some form of Title IV, HEA program aid. Decker College lost eligibility when the Department denied Decker's application for recertification on September 30, 2005. The institution ceased offering classes in October 2005, and went into a Chapter 7 bankruptcy in November 2005.

The Council on Occupation Education (COE) accredited Decker. Decker participated in the Federal Pell Grant, Federal Family Loan Education, Federal Direct Loan and Federal Supplemental Education Opportunity Grant programs.

## II.  SCOPE OF REVIEW

The Kansas City School Participation Team conducted a program review during the week of June 6-10, 2005, to examine Decker's administration of the Title IV, HEA programs. The review was to determine Decker's compliance with the statutes and Federal regulations as they pertain to the administration of the Title IV, HEA programs. The review consisted of, but was not limited to, a review of Decker's policies and procedures regarding institutional and student eligibility, individual student financial aid and academic files, attendance records, student account ledgers, and fiscal records. Interviews were conducted with the appropriate institutional personnel.

The Kansas City Team identified students enrolled at Decker who received Title IV, HEA program funds through the National Student Loan Database System (NSLDS) for the 2003-04 and 2004-05 award years. The students' files were reviewed in detail, including academic, admissions, financial aid and fiscal records. Additionally, Decker submitted several worksheets noted in the findings below, which identify students who were reviewed as part of the program review process. The attachments identified in this report list the names and social security numbers of students whose files were examined during the review. Due to the number and size of the attachments, they have been provided in an electronic format (CD) enclosed with this FPRD.

During the review, several areas of noncompliance were noted. Findings of noncompliance are referenced to the applicable statutes and regulations. Although the program review was thorough, it cannot be assumed to be all-inclusive. The absence of statements in this report concerning Decker College's specific practices and procedures must not be considered to be an acceptance, approval, or endorsement of those specific practices and procedures. Decker is not relieved of its obligation to comply with all the statutory and regulatory provisions governing the proper administration of the Title IV, HEA programs.

## III. FINDINGS AND REQUIREMENTS

### 1. INELIGIBLE PROGRAM -- APPROVAL REQUIREMENTS NOT MET

Decker did not have the appropriate accreditation from the Council on Occupational Education (COE), Decker's accrediting agency, to permit the institution to award Title IV, HEA program funds to students who were enrolled in Decker's construction trade Associate in Applied Science (AAS) degree programs (Carpentry, HVAC, and Electrical Science) which were offered substantially through an on-line delivery method. Decker began disbursing Title IV, HEA program aid to students enrolled in these programs in May 2004.

An institution's eligibility does not necessarily extend to all of its programs. Before awarding Title IV, HEA program aid, the institution must ensure that a program is included under its notice of accreditation from a nationally recognized accrediting agency (unless that agency does not require its accreditation) and is authorized by the appropriate state agency to offer the program (if the state licenses individual programs at postsecondary institutions). See 34 C.F.R. §§ 600.5(a)(6) and 600.10.

For Title IV, HEA program purposes, an "educational program" is defined by federal regulations as a legally authorized postsecondary program of organized instruction or study that leads to an academic or professional degree, vocational certificate, or other recognized educational credential. The term "legally authorized" is defined as the legal status granted to an institution through a charter, license, or other written document issued by the appropriate agency or official of the state in which the institution is physically located. See 34 C.F.R. § 600.2.

Decker offered the construction trade, associate degree programs at a length of 90 credit hours and 66 weeks. Decker structured the curriculum such that students enrolled in these AAS degree programs were required complete 64 of the 90 credits (71 percent) through distance learning (on-line, computer based instruction). Consequently, students enrolled in the construction degree programs were scheduled to attend one of Decker's campuses for only 8 out of the minimum 66 weeks (12 percent) of the program length.

In a letter dated August 23, 2005, COE notified the Department that it did not approve the construction trade AAS degree programs to be delivered primarily through distance education, as Decker was offering. COE explained that it understood the construction trade degrees would be taught primarily using a traditional delivery mode with limited distance education, which may have included general education courses as an option, with possible access to instructional materials via the Internet. COE stated that it approved these degrees to be delivered using a traditional delivery mode including classroom/lecture hours and shop/lab hours and not the "hybrid" format described above, which emphasized a distance education method of delivery. The referenced August 23, 2005 letter is included Attachment C on the accompanying CD.

Therefore, because COE did not approve the construction trade AAS degree programs to be delivered primarily via distance education, they were not educational programs included within the

scope of COE's accreditation of Decker. Thus, Decker violated Title IV, HEA program requirements by awarding Title IV, HEA, program funds to students in the construction trade AAS degree programs, as students enrolled in these educational programs were ineligible to receive Title IV, HEA program funds.

In a letter dated September 30, 2005, from COE to Decker, the Executive Director of COE, noted that in its presentation before the Commission on September 19, 2005, Decker requested that the August 23, 2005, letter be withdrawn. The Commission refused to do so; and furthermore, the Commission officially affirmed the August 23, 2005 letter, as written. See Attachment D on the enclosed CD.

## FINAL DETERMINATION

Without approval from the relevant agencies, an institution's programs may not be considered eligible for Title IV, HEA program funds. Disbursement of Title IV, HEA program funds to students enrolled in ineligible programs deprives other eligible students of need-based aid and creates a financial burden for the Department.

Decker maintains that it had notified and provided COE with sufficient information of the distance-education format under which the construction trade AAS degrees would be delivered and disagrees with COE's conclusion that these programs were not approved as offered. However, COE has issued a final decision on this matter, and affirmed that Decker's construction trade AAS degree programs were offered in a format outside of the scope of approval granted by COE.

Therefore, all Title IV, HEA program funds awarded to Decker's students enrolled in the construction trade AAS degree programs noted above, were improper. On September 9, 2005, Decker officials provided reviewers with a listing of all students who were enrolled in the construction trade AAS degree programs since they were first offered by Decker. This listing from Decker is included with this FPRD as Attachment 1 (entitled Decker Master Student List on the enclosed CD). Reviewers compared this listing with a report listing all recipients of Title IV, HEA program funds who were enrolled at Decker during the 2003/04 and 2004/05 award years. This report is included with this FPRD as Attachments 2 and 3 (entitled Decker Recipient List on the enclosed CD). By matching these three lists, reviewers were able to approximate the total amount of Title IV, HEA program funds disbursed to students enrolled in the ineligible AAS degree programs. The analysis is included as Attachment 4 (entitled Decker Distance Education Liability on the enclosed CD).

Students enrolled in the construction trade AAS degree programs were not eligible to receive Title IV, HEA funds for attending those programs. As a result, Decker will incur a liability for all Title IV, HEA program funds disbursed to these students. Reviewers determined this liability to be **$11,731,124** in Federal Pell Grant funds, **$8,293,681** in Subsidized Federal Family Education Loan (FFEL) and Federal Direct loan (FDL) funds, **$11,383,539** in Unsubsidized FFEL and FDL loan funds and **$187,541** in PLUS FFEL and FDL loan funds. This brings the total liability for this finding to **$31,595,885.** This information is set out in Attachment 4.

7

Case 05-61805-tnt   Claim 55-1 Filed 04/03/06   Page 7 of 14

## 2. RETURN OF FUNDS CALCULATION NOT DOCUMENTED/NOT PAID

During interviews with the Kansas City Team, Decker officials acknowledged that the institution had failed to return (refund) unearned Title IV, HEA funds, to their respective programs, as required by federal regulation, when students withdrew from Decker before completing the payment period in which they were enrolled. Decker had completed Return to Title IV Funds (R2T4) calculations for many of the withdrawn students, and determined the amount of unearned Title IV funds that Decker was required to return, but failed to return the unearned Title IV amounts to the Department and/or FFEL lenders. At the time of the program review, in early June, 2005, Decker officials estimated the amount of unmade refunds to be $1.5 million. Reviewers required Decker to determine the full extent of the unmade refunds and provide an accounting of all unpaid refunds, including the total amount of unearned Title IV, HEA, funds owed to the Department and/or FFEL lenders.

When an institution discovers that a student has ceased attendance, the regulations at 34 C.F.R. § 668.22 require the institution to determine the amount of Title IV, HEA program funds that the student earned under the R2T4 calculation, and the amount of funds that remain unearned as of the date he or she ceased attendance. The amount of the Title IV, HEA program funds earned is based on the amount of time the student spent in academic attendance. Up through the 60% point of each payment period or period of enrollment, an institution must determine the amount of Title IV, HEA funds the student has earned at the time of withdrawal. A student completing more than 60% of the payment period or period of enrollment, depending upon which period the school uses, earns 100% of the Title IV, HEA program funds for that period.

In an email dated August 16, 2005, addressed to the Area Case Director of the Kansas City School Participation Team, Decker explained its failure to return unearned Title IV, HEA program funds to the Department. Decker claimed the unmade refunds resulted from the exponential growth in enrollment at Decker, which was accompanied by an increased number of unofficial withdrawals. Decker stated that its original academic and attendance records were manually updated. Later efforts to automate the systems resulted in backlogs, as the records had to be input manually. Consequently, Decker was unable to determine the enrollment status of its students. Data input errors and an inability to keep up with the continued growth experienced by Decker, exacerbated the problem of identifying all of the unmade refunds. The August 16, 2005 email is included with this FPRD as Attachment A on the enclosed CD.

As part of the program review, Decker completed a file review and identified over 2,600 students who withdrew, either officially or unofficially, and for whom it owed refunds to the Department, for the 2003/04 and 2004/05 award years. Decker identified the students in worksheets A, B, C, D, E and Z, which were submitted to reviewers. Reviewers extracted the columns from each of the above Decker worksheets that identified liabilities owed by Decker and prepared a new worksheet entitled Attachment 5, which provides a concise summation of liabilities for each finding in this FPRD. Attachment 5 is included on the accompanying CD to this FPRD. In addition, the CD contains copies of the original worksheet submitted by Decker. They are entitled worksheet A, worksheet B, worksheet C, worksheet D, worksheet E, and worksheet Z on the enclosed CD.

8

In a letter dated August 5, 2005, included with this FPRD, on the enclosed CD, as Attachment E, Decker was also required to determine the withdrawal date for students who unofficially withdrew from the distance education, construction trade AAS degree programs. Reviewers determined that Decker was inflating the official withdrawal dates used in the R2T4 calculations for these students. Specifically, Decker contacted students who had already stopped taking classes and therefore had unofficially withdrawn, and used that later date of contact as the date the student officially notified Decker of his or her withdrawal. Because Decker was contacting these students after the 60% point in their enrollment period, Decker recorded that these students had earned all Title IV, HEA funds for that period. By treating the date it contacted students as the withdrawal date for students who had already stopped taking classes, Decker significantly overstated the amounts of Title IV, HEA program funds the students actually earned.

## FINAL DETERMINATION

Failure to return unearned Title IV, HEA program funds to the respective program accounts, as determined by R2T4 calculations, results in the institution retaining funding to which it is not entitled and creates unnecessary expense for the Department.

In response to the program review, Decker was required to complete a file review of all students who withdrew, either officially or unofficially, for the award years reviewed. As a result of the file review, Decker identified students for whom an R2T4 calculation was not completed or for whom the unearned funds were not returned to the respective Title IV, HEA programs. Decker submitted the above noted worksheets (A, B, C, D, E, Z) documenting a total of **$442,286** in Federal Pell Grant funds and **$2,849,473** in Federal Direct Loan and Federal Family Education Loan funds as unearned Title IV, HEA program funds and not repaid to the Department and/or FFEL lenders. Of this total, *$338,882* in Federal Pell Grant funds and *$2,439,117* in Federal Direct Loan and FFEL funds are for students who were enrolled in the distance education programs identified in Finding Number 1, above.

Unearned Title IV, HEA program funds for students who were enrolled in the distance education programs identified in Finding Number 1, above, and are also considered unearned funds described in this finding, are included within the total funds for those programs that are identified as a liability in finding number 1. The distance education liability for this finding is documented in Attachment 5 on the enclosed CD, in the worksheet entitled Worksheet Summary, columns D, E, and F.

However, of the unreturned amounts, **$103,405** in Federal Pell Grant funds and **$410,356** in Federal Direct Loan and FFEL funds are attributable to students enrolled in certificate programs. These liabilities are not encompassed in the liability total identified in Finding Number 1. Therefore, in addition to the liabilities identified in Finding Number 1, Decker is liable for **$513,761** identified in Finding Number 2. This liability is summarized in Attachment 5 on the enclosed CD, in the worksheet entitled Cert_Main, columns G, H, I and J.

**Note:** A difference exists between the liabilities summarized in Attachment 5 for the certificate programs and the original spreadsheets submitted by Decker. In Decker's spreadsheet entitled

9

*Certificate and Main Group A*, Decker indicated it had repaid $125,404 in Subsidized and Unsubsidized Federal Direct Loans, to the Direct Loan program. After considerable research by Federal Direct loan staff, it was concluded that Decker had not repaid these loans as claimed. Therefore, no allowance was granted for the Federal Direct loans that Decker reported it had returned to the Federal Direct Loan program, and these amounts were included in the identified liability totals set forth above. Attachment DL on the CD, is an email showing that the Department's Direct Loan staff checked the loan records of the affected students and confirmed that those records do not reflect the return of any of these funds to the Department.

### 3. FFEL DISBURSEMENTS ATTRIBUTED TO UNATTENDED/INCORRECT PAYMENT PERIODS

Decker disbursed Title IV, HEA Federal Family Education Loan (FFEL) proceeds to students for payment periods in which the students did not attend. The Department's regulations at 34 C.F.R. § 682.604(c) generally require institutions to pay FFEL proceeds to students in at least two disbursements, regardless of the amount of the loan or the length of the loan period. Schools may apply FFEL loan proceeds to a student's account at the beginning of a payment period for a student who is still in attendance. The student, however, may earn no part of the second disbursement until he or she begins attending the second payment period. For students in self-paced programs, such as the ones that Decker offered with a substantial distance component, a student cannot begin the second payment period until completing half of the scheduled time and half of the credits. See 34 C.F.R. § 682.604(c)(7).

If a student withdraws before the beginning of a second payment period included in the loan period, any portion of the loan proceeds that were awarded for the unattended payment period that were received and applied to the student's account must be returned to the lender.

Decker scheduled and disbursed FFEL loans after students began or completed 18 credits, which was one-half of the 36 credit-hour academic year as defined by Decker. However, some students reached this point before passing the scheduled midpoint in the number of weeks for the second payment period to begin. Decker defined the academic year for the construction trade AAS degree programs as 30 weeks. Therefore, the mid-point of the academic year was 15 weeks. The construction trade AAS degree programs were structured so that after completing the first four-week residential portion of the program, students would have earned 14 credits. Students were then scheduled to begin the first on-line course, which was four credits. Decker disbursed the second FFEL payment to students who either had not completed the 18 credits or the 15-week points of the period. Under the structure of the construction trade AAS programs at Decker and the Title IV, HEA program requirements, a student must both complete 18 credits and reach the 15-week points in order to be eligible for the second disbursement. Decker failed to monitor a student's progress and make disbursements to students based on completed weeks in addition to the number of credits earned.

Additionally, through this file review process, Decker identified a number of students for whom Title IV, HEA funds were disbursed, but for whom it was unable to document one

10

day of attendance in the courses in which the students were enrolled. If an institution is unable to document that a student attended school during an enrollment period, the school is required to notify the Secretary within 30 days and return to the Secretary (i) any loan proceeds credited by the school to the student's account, and (ii) the amount of payments made by the student to the school to the extent that they do not exceed the amount of any loan proceeds disbursed by the school to the student. See 34 C.F.R. § 682.604(d)(4)

## FINAL DETERMINATION

Decker applied FFEL loan proceeds to student accounts for payment periods that the students did not begin attending, and the entirety of those proceeds was supposed to be returned.

Decker completed a review of all students enrolled in the construction trade AAS degree programs, to determine which students were disbursed FFEL loans and subsequently withdrew before completing the number of weeks and credit hours required for eligibility to receive a subsequent disbursement or for whom it was unable to document one day of attendance. Decker determined **$2,290,904** in ineligible FFEL funds was disbursed to students who are identified in worksheets A, B, C, D E and Z. This liability amount is summarized in Attachment 5 on the enclosed CD, columns H, I, and K on the worksheet entitled Worksheet Summary.

Since these unearned Title IV, HEA program funds are for students who were enrolled in the distance education programs identified in finding Number 1, above, the unearned funds described in this finding are included within the total funds for those programs that is identified as a liability in Finding Number 1.

## 4. IMPROPER DISBURSEMENT--FEDERAL PELL GRANT DISBURSED PRIOR TO MIDPOINT

Decker improperly disbursed second Title IV, HEA Federal Pell Grants (Pell Grant) disbursements to students who did not reach the midpoint of the academic year for the program in which they were enrolled.

For an educational program measured in credit hours without academic terms a student cannot receive a second Pell Grant disbursement until completing the required number of credit hours in the previous payment period, as defined by 34 C.F.R. §§ 668.4(b) and 690.75(a)(3).

In a non-term program, such as the ones Decker offered with a substantial distance education component, if a student's progress is measured in credit hours, a student may not be paid for a subsequent payment period until the student finishes both the credit hours and the weeks of the payment period for which the student has already been paid. Decker defined the academic year for the construction trade AAS degree programs as 36 credit hours and 30 weeks. Pell Grant funds were scheduled and disbursed after the student had completed 18 credits, but without taking into consideration whether the students also had completed the 15 weeks allocated to the first payment period.

11

If a student is paid prior to completing the required hours, but later goes on to complete the hours, no liability exists because the student remained enrolled to earn the funds that were disbursed prematurely. However, if a student receives the second or subsequent payment early and leaves the institution prior to attaining the required number of credits and/or weeks, the institution must return all of the premature disbursement.

Decker failed to monitor a student's progress based on completed weeks in addition to the number of credits earned, and made improper second Pell Grant disbursements to students that never completed the first 15 weeks that were scheduled for the program.

## FINAL DETERMINATION

Improper Pell Grant disbursements constitute unearned Title IV, HEA program funds that the institution is not entitled to keep, and imposes an unnecessary expense on the Department and taxpayers who provide the funding for these programs.

Decker completed a review of all students enrolled in the construction trade AAS degree programs who received Pell Grant disbursements, and identified the students who were not eligible to receive the second Pell Grant disbursement. Decker identified **$1,350,650** in ineligible Federal Pell Grant funds disbursed to students identified in worksheets A, B, C, D E and Z. This liability is summarized in column G in the worksheet entitled Worksheet Summary in Attachment 5 on the enclosed CD. Decker will incur a liability for these ineligible Federal Pell Grant funds.

However, since these unearned Title IV, HEA program funds are for students who were enrolled in the distance education programs identified in finding Number 1, above, the unearned funds described in this finding are included within the total funds for those programs that is identified as a liability in Finding Number 1.

## 5. INCORRECT FEDERAL PELL GRANT CALCULATION FOR INSTITUTION WITHOUT FIXED TERMS

Decker failed to properly calculate Federal Pell Grant awards during the 2003/04 and 2004/05 award years, for students enrolled in the construction trade AAS degree programs. Specifically, as non-standard term programs, Decker was required to pro-rate Federal Pell Grants based on the number of weeks a student normally takes to complete a payment period.

In a letter dated August 5, 2005, the Department notified Decker, it was incorrectly awarding Federal Pell Grant funds to students enrolled in the construction trade AAS degree programs, and provided detailed instructions on how Decker was to correctly determine Federal Pell Grant awards for these students. The August 5 letter is included with this FPRD as Attachment E on the enclosed CD. Because the construction trade AAS degrees are non-term programs, Decker should have

adjusted the amount of the Pell Grant disbursements using Formula 4, as required by 34 C.F.R. § 690.63(a)(4) to determine the annual award of Federal Pell Grant funds for students enrolled in these programs.

Also, as noted in the comments discussed as part of the negotiated rule-making process, for non-term programs that are predominantly self-paced, institutions are required to track the actual performance of full-time students in completing the program in order to establish the appropriate disbursement procedures. Fed. Reg. 54,724 to 53,725 (1994) (to be codified at 34 C.F.R. Part 690). An institution without fixed terms must first find the average length of the payment periods before a student's Federal Pell Grant can be calculated. Once the length of the payment period has been determined, the institution must multiply the student's Scheduled Award by the credits in the payment period, divided by the hours in the academic year. A student can receive only one Scheduled Award in an award year.

In a program without academic terms, the payment period does not end until the student has completed all of the work paid for in the first payment period. Each subsequent payment period begins only when the previous one ends. A student may not be paid a Federal Pell Grant for that subsequent payment period until the student has completed all of the clock or credit hours in the first payment period.

Decker's failure to establish a disbursement schedule for Pell Grants that used the average length of payment period lengths based on actual student performance, resulted in accelerated Pell Grant disbursements to its students in the AAS degree programs. Students that stopped attending Decker were therefore more likely to have received Pell Grants that they had not earned.

## FINAL DETERMINATION

Failure to properly calculate Federal Pell Grant awards for its students resulted in Decker receiving funds to which it was not entitled and caused increased expense for the Department and the taxpayers. The Department required Decker to recalculate Federal Pell Grant awards and determine the total amount of Federal Pell Grant funds over awarded to students enrolled in the construction trade AAS degree programs for the 2003/04 and 2004/05 award years.

Decker recalculated the Federal Pell Grant awards for all students enrolled in the construction trade, AAS degree programs and documented **$905,587** in Federal Pell Grant funds that were over awarded and required to be returned to the Department. Students who were over awarded Federal Pell Grant funds are identified on worksheets A, B, C, D E and Z and the worksheet entitled Active Pell Recalculations. The liability amount is identified in Attachment 5, and is calculated by summing the resultant totals on the worksheet entitled ActivePell **($602,539)** and column C of the worksheet entitled Worksheet Summary, **($303,048)**, both of which may be found in Attachment 5 on the enclosed CD.

Since these unearned Title IV, HEA program funds are for students who were enrolled in the distance education programs identified in finding Number 1, above, the unearned funds

13

described in this finding are included within the total funds for those programs that is identified as a liability in Finding Number 1.

### 6. LACK OF ADMINISTRATIVE CAPABILITY

The findings discussed above all indicate that Decker lacked the administrative capability to administer the Title IV, HEA programs properly. No further discussion is included on this topic since the institution has closed.

## IV. LIABILITY SUMMARY

As noted in finding number 1, Decker awarded Pell Grant and FFEL/Federal Direct Loan (FDL) funds totaling **$31,595,885** to students enrolled in the construction trade AAS programs ($11,731,124 in Federal Pell Grant funds and $19,864,761 in FFEL and FDL amounts). The programs lacked the necessary accreditation from COE, and therefore were ineligible for federal student aid funding. The liabilities identified in Findings 3, 4, and 5 have been separately quantified, but are also encompassed within the disbursements made to the ineligible programs that are identified in finding number 1.

Also $338,882 in Federal Pell Grant funds and $2,439,117 in FFEL identified in finding number 2 as liabilities are attributable to the construction trade AAS degree programs and would be included as part of Finding 1. However, as noted in finding number 2, $103,405 Federal Pell Grant funds and $410,356 in FFEL and FDL, or a total of **$513,761**, of the liabilities identified in Finding 2 are attributable to students enrolled in certificate programs and would be separate and apart from the liabilities identified in Finding 1.

As a result, the unduplicated liabilities identified in this FPRD total **$32,109,646**. ($11,834,529 in Pell Grants and $20,275,117 in FFEL and FDL loan funds).

No repayment instructions are included in the FPRD because Decker is currently in bankruptcy. The FPRD does, however, establish the liabilities that are related to this program review.

## V. APPEAL PROCEDURES

This constitutes the Department's final program review determination with respect to the liabilities identified from the June 6-10, 2005, program review. If Decker wishes to appeal to the Secretary for a review of monetary liabilities established by this final program review determination, the institution must file a written request for an administrative hearing. The Department must receive the request no later than **45 days** from the date Decker receives this final program review determination. **An original and four copies of the information you**

14

**submit must be attached to your request.** Your request for an appeal may be sent by mail or overnight delivery service to:

> U.S. Department of Education
> ATTN: Mary E. Gust (Director, Administrative Actions & Appeals Division)
> Mail Stop: 5353
> 7100 Old Landover Road
> Landover, MD 20785-1506

If Decker submits its request using a courier delivery service, the request must be sent to:

> U. S. Department of Education
> Mary E. Gust (Director, Administrative Actions & Appeals Division)
> 830 First Street, N.E Room 83F2
> Washington, D. C. 20002

Decker's appeal request must: (1) indicate the findings, issues and facts you dispute; (2) state the institution's position, together with pertinent facts and reasons supporting its position; (3) include all documentation it believes the Department should consider in support of the appeal; and (4) include a copy of this final program review determination. The program review control number (200530724584) must also accompany your request for review.

If Decker's appeal request is complete and made on a timely basis, the Department will schedule an administrative hearing in accordance with § 487(b)(2) of the HEA, 20 U.S.C. §1094 (b)(2). The procedures followed with respect to Decker's appeal will be those provided in 34 C.F.R. Part 668, Subpart H.

Program records relating to the period covered by this program review must be retained until <u>the later of</u>: claim(s) or expenditures questioned in the program review, 34 C.F.R. § 668.24 (e)(3)(i); or the end of the retention period applicable to the record under 34 C.F.R. §§ 668.24(e)(1) and (e)(2).

Questions relating to any appeal of this final program review determination should be directed to the address noted above.

15