# EXHIBIT D



THE SECRETARY OF EDUCATION
WASHINGTON, DC 20202

In the matter of

**DECKER COLLEGE**

Respondent.

**Docket No. 06-22-SP**
Federal Student Aid Proceeding

## DECISION OF THE SECRETARY

This matter comes before me on appeal by the Office of Federal Student Aid (FSA) of the March 15, 2016 Decision issued by Administrative Judge Robert G. Layton (AJ). FSA has appealed the AJ's Decision with regard to two findings in FSA's Final Program Review Determination (FPRD). On Finding One, the AJ set aside FSA's determination that Decker College (Decker) is liable for $31,595,885 for disbursing Title IV funds in unaccredited distance education programs. On Finding Two, the AJ ordered FSA to recalculate downward Decker's liability for funds disbursed to students who withdrew early from programs.

Based on the following analysis, I will affirm the AJ's Decision on both Findings.

I.   Background

The history of this case is summarized extensively in the AJ's Decision. I repeat here only what is necessary to address the appealed findings.

Decker was a Kentucky-based private educational institution with multiple locations.[1] As of 2004, Decker was accredited to offer several certificate programs.[2] Decker participated in Title IV and, as such, FSA conducted a review of its programs. Following that review, Decker's accreditor, the Council on Occupational Education (COE), sent FSA a letter dated August 23, 2005 (COE Letter), stating that COE had not accredited Decker's distance learning programs.[3] FSA later issued the FPRD on March 31, 2006, making various findings of noncompliance. Only Finding One and Finding Two of the FPRD, described below, are at issue in this appeal.

In Finding One, FSA concluded that Decker offered, for example, a construction trade program of 90 credit hours in which students completed 71% of the program through "distance learning (i.e., online, computer-based instruction.)"[4] In the COE Letter, COE stated that Decker's distance learning programs did not fall within the scope of Decker's accreditation. Therefore, FSA concluded that students in that program were not eligible for Title IV funds, because students and institutions are only eligible to receive Title IV funds when the institution

---

[1] Decision, p. 1.
[2] *In re Decker College, Inc.*, 2012 WL 6136708 (Bankr. W.D. Ky. 2012), *4.
[3] Decision, p. 2. Specifically, the COE Letter stated COE's understanding "that these degrees would be taught primarily using the traditional delivery mode with limited distance education. . . . COE did not approve these associate degrees to be offered primarily through distance education." *In re Decker College, Inc.*, *2.
[4] FPRD, p. 6.

is accredited by a recognized accreditor.[5] FSA concluded that Decker was liable for all Title IV funds awarded for these programs, a total of $31,595,885, from its inception in May 2004 until it was not renewed in September 2005.[6]

In Finding Two, FSA concluded that Decker failed to complete all required refunds of Title IV funds for more than 2,600 students who withdrew early from programs during the 2003-2004 and 2004-2005 award years.[7] Decker identified these students in worksheets labeled A, B, C, D, E, and Z.[8] FSA concluded that Decker "inflated" some of these students' withdrawal dates by inappropriately contacting "unofficially" withdrawn students to confirm their withdrawals, and then noting the dates of these contacts as the "official" withdrawal dates.[9] FSA determined that Decker owed the Department an additional $513,761 in liability under Finding Two, which was not encompassed by the Finding One liability.[10]

In addition, FSA terminated Decker's eligibility for Title IV based on COE stating it had not accredited the distance learning programs, after which Decker both filed for bankruptcy and appealed FSA's decision to the Department's Office of Hearings and Appeals (OHA).[11] During the bankruptcy proceedings, Decker challenged the COE Letter, which formed the basis for FSA's Finding One. In anticipation of a ruling on this issue, the Department stayed the OHA appeal. With the approval of the parties, the bankruptcy court conducted an evidentiary hearing on the question whether COE made factually erroneous statements in its letter about Decker's distance education programs.

First, the court considered Decker's applications for accreditation of its distance learning programs. Decker submitted applications for these programs in 2004 which conformed to the requirements of COE's Handbook of Accreditation. The application explicitly indicated that courses would be taught online, referred to the "Division of Distance Education," and marked boxes to indicate that courses would be "Taught through distance education" and "Taught at remote locations."[12] COE argued that Decker "buried" references to distance education in its application, but the court found that argument unpersuasive, noting that Decker's disclosures were made in attached documentation at COE's request.[13] The court was also persuaded by testimony that Decker held a series of meetings in 2003 and 2004 with COE staff where Decker staff "discussed [Decker's] plans for distance education in detail, including through the use of electronic presentation and [] demonstration of the actual program."[14]

Next, the court considered COE's approval of Decker's applications. COE sent Decker approval letters granting accreditation of its distance learning programs without any reservation

---

[5] FPRD, pp. 6–7; FSA Appeal, p. 12 (citing 20 U.S.C. §§ 1001(a)(5), 1002(a), (b), (c); 34 C.F.R. § 600.4(a)(5), 600.5(a)(6), 600.6(a)(5) (2007); *see also* 34 C.F.R. § 668.13(a)(1)).
[6] FPRD, p. 7.
[7] *Id.*, p. 8.
[8] *Id.*, p. 8.
[9] *Id.*, p. 9.
[10] *Id.*, p. 9.
[11] *Keats v. Council on Occupational Educ.*, 2012 WL 6084646 (W.D. Ky. 2012), *1.
[12] *In re Decker College, Inc.*, *5.
[13] *Id.*, *6.
[14] *Id.*

2

or caveats about the distance nature of the programs.[15] Subsequently, COE reviewed a comprehensive self-study prepared by Decker, which also discussed the growing Division of Distance Education.[16] COE also sent an eight-member site visit team to Decker who, after reviewing the self-study, inspected Decker's operations, including its distance education programs and associated faculty.[17] The court was persuaded by testimony that two members of the site visit team "were given a tour and demonstration of the distance education facilities" and that one member "was so impressed that he wanted [Decker] to send someone down to his own school in New Orleans to work with them."[18] The team's report concluded that Decker "informed [COE] of all planned and unplanned substantive changes."[19]

Based on this evidence and testimony, the bankruptcy court concluded that COE was fully aware of Decker's distance education programs included in its application. Accordingly, the bankruptcy court held that COE's statements to FSA "were factually erroneous" because "COE in fact approved delivery of the Programs through distance education."[20]

COE appealed the ruling, which the U.S. District Court for the Western District of Kentucky affirmed, holding that "[t]he Bankruptcy Court reasonably found COE to be dishonest when it told the Department it did not approve the Hybrid Programs to be offered in such a manner."[21] COE appealed that decision, but failed to certify the question as an interlocutory appeal. Accordingly, the U.S. Court of Appeals for the Sixth Circuit dismissed the appeal for lack of jurisdiction.[22] Following these proceedings in federal court, the AJ lifted the stay on OHA's administrative appeal. After the parties provided briefs, the AJ issued the Decision under review here.

In the Decision below, the AJ first considered Finding One. He found that the parties "agree that the sole basis for the Finding [One] liability was the letter from COE to FSA."[23] He then considered the bankruptcy court's "well-reasoned and strongly supported" ruling that the COE letter contained factually erroneous statements and the District Court's affirmation of that ruling.[24] The AJ stated that "[i]f that letter is false, then FSA has no remaining basis for imposition of liability."[25] Notably, the AJ did not accept the bankruptcy court's ruling as controlling authority; instead, he took judicial notice of it and considered it "very significant" to his analysis.[26]

---

[15] *Id.*, *7.
[16] *Id.*, *8.
[17] *Id.*, *8–10.
[18] *Id.*, *11.
[19] *Id.*
[20] *Id.*, *12.
[21] *Keats v. Council on Occupational Educ.*, *6. The District Court also remanded the case to the bankruptcy court for further proceedings.
[22] *In re Decker College, Inc.*, 578 F.App'x. 579, 582 (6th Cir. 2014).
[23] Decision, p. 2
[24] *Id.*, pp. 2–4, 5.
[25] *Id.*, p. 5.
[26] *Id.*

3

Neither party submitted additional evidence with their briefs.[27] Therefore, the AJ's analysis rested entirely on the COE Letter and the subsequent court rulings on the letter's veracity.[28] Having considered all the evidence in the case, the AJ found "that Decker has met its initial burden of proof under 34 C.F.R. § 668.116(d)(2) to show it complied with the program requirements at issue in Finding [One]."[29] Accordingly, the AJ determined that COE had accredited Decker's distance programs, Finding One was unsupported, and the AJ set it aside.

Regarding Finding Two, the AJ held that Decker met its burden of demonstrating that it appropriately calculated the Title IV refunds for students listed in spreadsheets A and B, but not in spreadsheets labeled C, D, E, and Z. Therefore, he ruled that FSA must recalculate Decker's liability under Finding Two to exclude the students listed in spreadsheets A and B.

FSA has appealed these two findings. I now turn to my analysis.

II.     Finding One – Accreditation of Decker's Distance Education Programs

As the appellant, FSA bears the burden of demonstrating error in the Decision.[30] FSA makes three main arguments regarding Finding One: 1) the AJ inappropriately relied on a non-final judicial determination and should have preserved the stay; 2) the AJ's analysis of accreditation did not distinguish between on-campus and distance education; and 3) the AJ contradicts the Department's decision to renew COE's recognition. I will address each argument in turn.

First, FSA argues that "the dispute between Decker and COE is still not final . . . as shown by COE's appeal to the U.S. Court of Appeals."[31] Although there is no indication of a currently pending appeal, FSA reasons that "there is no finality to the COE's determination by the district court."[32] Without such a final decision, FSA argues that Decker cannot be found in compliance with its Title IV obligations examined in Finding One.[33] Decker responds by arguing that the AJ made an independent determination, so the lifting of Decker's liability is not based on a non-final judicial decision.[34]

I am unpersuaded by FSA's argument. Rather than using a non-final judicial decision as the position of the Department—the appropriateness of which is neither discussed nor relevant here—the AJ made an independent decision after evaluating the available evidence, including the analysis of the judicial opinions discussed above. I find no basis to conclude that the AJ inappropriately relied on the judicial opinions. In fact, both parties originally agreed that the bankruptcy court should rule on the question whether the COE Letter was erroneous. In its ruling on that question, the bankruptcy court even noted that the Department stayed its

---

[27] *Id.*, p. 6.
[28] *Id.*.
[29] *Id.*, p. 7.
[30] *See Central State University*, Dkt. No. 12-32-SA, U.S. Dep't of Educ. (Sept. 2, 2014) (Decision of the Secretary), p. 1.
[31] FSA Appeal, p. 21.
[32] *Id.*
[33] *Id.*, pp. 21–22.
[34] Decker Answer, pp. 15–16.

administrative appeal "so that this Court may make the within findings, which will be used by the Department in its proceedings."[35] The bankruptcy court provided an extensive analysis of that question following an evidentiary hearing and the District Court also provided a well-reasoned decision affirming the bankruptcy court. The AJ's consideration of those opinions was appropriate.

In essence, the relief FSA seeks is for me to set aside an administrative decision of the Department given the possibility of a future reversal by the Court of Appeals of the bankruptcy court's and district court's conclusions. Such a delay in the Department's issuing a final decision in this matter is inappropriate. In 2009, OHA implemented a stay of the administrative appeal to await a ruling from the bankruptcy court on this very issue. With that ruling in hand, the AJ correctly lifted the stay and proceeded with deciding the matter. Therefore, I reject FSA's first argument.

Second, FSA argues that the AJ's decision is ambiguous because it does not sufficiently consider "the two types of program accreditation that COE put at issue."[36] FSA argues that COE accredited Decker's distance programs "offered predominantly on campus" but that Decker "was required to obtain new approval for programs the first time it wanted to offer them predominantly by distance education."[37] In essence, FSA argues that Decker's distance programs *could not be* accredited because Decker did not follow COE's process for expanding the scope of its accreditation beyond offering programs predominantly offered on campus.[38]

FSA essentially argues that the bankruptcy court, District Court, and now OHA have all misunderstood the operative question. All of those entities evaluated the facts and concluded that COE had actually accredited Decker's distance programs, then erroneously informed FSA that the programs were unaccredited. FSA argues now that the real question was whether Decker applied to expand its accreditation to include *predominantly distance* programs, because *predominantly on-campus* programs were already accredited even if they included a distance component.

I am unpersuaded by FSA's argument. Neither Decker nor the AJ has an obligation to demonstrate that COE's accreditation of the programs was done in compliance with COE's procedures. The relevant factual findings made in this case pertain to whether COE actually accredited Decker's distance education programs. Every tribunal has concluded that it did and, consequently, that the COE Letter was factually erroneous. I find that the AJ considered the appropriate question while making his ruling. Therefore, I reject FSA's second argument.

Finally, FSA asserts that the AJ's decision conflicts with the Department's renewal of COE's recognition as an accreditor.[39] FSA argues that the AJ's ruling "is at odds with the Secretary's recognition of COE."[40] FSA also argues that the AJ exceeded his authority by

---

[35] *In re Decker College, Inc.*, *1.
[36] FSA Appeal, p. 24.
[37] *Id.*
[38] *Id.*, p. 25.
[39] *Id.*, p. 26.
[40] *Id.*, p. 27.

questioning "the merits of the accrediting agency determination."[41] FSA reasons that "[t]he accreditor establishes the scope of the accreditation for the institution and its programs" and FSA does not have the authority to broaden that scope.[42] FSA also repeats its earlier argument that "any decision about COE's accreditation decision concerning the Decker distance programs must be based upon a final judicial determination."[43]

I do not see the Department's recognition of COE as an accreditor as a basis for reversing the AJ's decision. Although the recognition decision may have included consideration of the Decker matter, COE's handling of Decker was not the sole basis for renewing COE's recognition. Furthermore, FSA references COE's renewal of recognition from 2013. At that time, the District Court decision remained pending before the Court of Appeals and the OHA appeal remained stayed.[44] The process of renewing COE's recognition was distinct from both Decker's case in federal court and its administrative appeal. COE's renewed recognition did not have any precedential effect on those pending cases. The AJ appropriately lifted the stay and issued an independent decision that took into account those judicial proceedings.

I also do not agree that the AJ's ruling exceeded his authority with respect to accreditation decisions. The AJ found that the sole basis for FSA's Finding One was the COE Letter. He found the COE Letter was erroneous because COE had accredited Decker's distance programs, despite its letter stating otherwise. Having found the COE Letter erroneous, the AJ found Finding One factually unsupported and he vacated it. These conclusions do not disturb the Department's proper role in its dealings with accreditors, nor do they change the fact that accreditors establish the scope of accreditation for specific programs and institutions.

Based on the above analysis, I affirm the AJ's decision regarding Finding One. I now turn to Finding Two.

### III. Finding Two – Title IV Refunds

When a student receiving Title IV funds withdraws early from a program of study, the institution must determine the amount of grant or loan money that the student earned as of the student's withdrawal date.[45] The institution determines what percentage of the payment period's funds the student earned based on the student's withdrawal date.[46] The institution must then return any unearned Title IV funds.[47]

---

[41] *Id.*
[42] *Id.*, p. 29.
[43] *Id.*, p. 26.
[44] *See* U.S. Department of Education, *Accreditation in the United States*, http://www2.ed.gov/admins/finaid/accred/accreditation_pg6.html. The Court of Appeals dismissed the appeal for lack of jurisdiction on Sept. 4, 2014.
[45] 34 C.F.R. § 668.22(a)(1).
[46] *Id.* § 668.22(e)(2)(i).
[47] *Id.* § 668.22(g).

For an institution that is not required to take attendance,[48] the institution can determine the withdrawal date based on when the student begins the school's withdrawal process or otherwise provides "official notification" of his or her withdrawal.[49] Absent such official notice, the school will generally use the mid-point of the payment period as the withdrawal date.[50]

In this case, Decker identified students suspected of ceasing attendance.[51] Decker attempted to contact these students to determine whether they intended to withdraw.[52] Decker recorded "unofficial" withdrawal dates for those students it failed to contact, and recorded "official" withdrawal dates for those students it contacted who orally provided notice of their withdrawal.[53] Decker provided information about these students and their withdrawal dates to FSA in the form of several spreadsheets, labeled A, B, C, D, E, and Z.[54]

Upon reviewing these spreadsheets, FSA concluded that Decker erred by recording "official" withdrawal dates for students contacted by telephone, which FSA asserts allowed Decker to "inflate" those students' terms of attendance to erroneously capture additional Title IV funds.[55] FSA argues that official withdrawal can only occur if the student initiates contact with the school, not vice versa. Therefore, the argument goes, Decker should have calculated unofficial withdrawal dates without regard to the phone calls.

After reviewing the evidence, the AJ concluded that Decker met its burden to account for its Title IV distributions regarding the majority of students in question, listed on spreadsheets A and B.[56] However, he found that the rest of the spreadsheets lacked significant information and did not satisfy Decker's obligation.[57] Therefore, the AJ reversed Finding Two with regard to spreadsheets A and B and instructed FSA to recalculate Decker's liability accordingly.[58]

On appeal here, FSA argues that official withdrawal can only occur if the student initiates the contact with the institution, not vice versa, and that the student must provide notice of withdrawal before ceasing attendance.[59] Specifically, FSA asserts that "[t]he regulations do not permit the institution to . . . contact the student to ask when the student stopped attending and use that information [as] a form of official notification that the student withdrew."[60] Decker responds that it did not necessarily calculate official withdrawal dates based on the date of telephone contact with students; instead, it argues that it used the information gathered from

---

[48] An institution may be required to take attendance for a variety of reasons prescribed in the regulations, including when it is required to do so by an outside entity or when the institution self-imposes a requirement that its instructors take attendance. 34 C.F.R. § 668.22(b)(3).
[49] *Id.* § 668.22(c)(1)(i), (ii).
[50] *Id.* § 668.22(c)(1)(iii).
[51] Decision, p. 8.
[52] *Id.*
[53] *Id.*
[54] *Id.*, p. 9.
[55] *Id.*
[56] *Id.*, p. 10.
[57] *Id.*, p. 10–11.
[58] *Id.*, p. 11.
[59] FSA Appeal, p. 30.
[60] *Id.*

these conversations with students to calculate the appropriate dates.[61] Further, Decker notes that FSA guidance allows a student to provide official notice of withdrawal when the student "has . . . ceased to attend the school and does not plan to resume."[62]

I am unpersuaded by FSA's arguments regarding Finding Two. FSA has not established that a student can only provide official notice by: 1) initiating contact with the institution; and 2) doing so before or contemporaneous with the cessation of the student's attendance.[63] The regulation actually requires calculation of the withdrawal date as "[t]he date, *as determined by the institution*, that the student otherwise provided official notification to the institution, in writing or orally, of his or her intent to withdraw."[64] The regulations do not prescribe which party must initiate contact or when official notice must be provided relative to the cessation of attendance.

In this case, the AJ considered the documentation Decker provided and, in light of the regulatory requirements, was satisfied that Decker met its obligations with regard to students listed on spreadsheets A and B. FSA has not demonstrated that the AJ erred in his analysis. Therefore, I will affirm the AJ's decision on Finding Two.

### ORDER

ACCORDINGLY, the Decision of Administrative Judge Layton is hereby AFFIRMED.

So ordered this 2nd day of November 2016.

*/s/ John B. King, Jr.*
John B. King, Jr.

Washington, D.C.

---

[61] Decker Answer, p. 30.
[62] *Id.*, p. 29 (quoting FSA Handbook 2004-2005 at 5-54).
[63] FSA Appeal, p. 30.
[64] 34 C.F.R. § 668.22(c)(1)(ii) (emphasis added).

8

## Service List

Greer Armandroff, Esq.
Office of Hearings and Appeals
U.S. Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202-4616

David E. Mills, Esq.
Joseph J. Vaughan, Esq.
Cooley LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Steven Z. Finley, Esq.
Office of the General Counsel
U.S. Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202-2100